IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TOM TUDUJ,               )
                        )
     Plaintiff,       )
                        )
     v.             )      Case No. 3:15-cv-00320-RJD
                        )
SANOFI-AVENTIS U.S. LLC,  )
GLAXOSMITHKLINE and     )
WYETH-PFIZER,       )
                        )
     Defendants.    )

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Following a 2009 bench trial in Cook County Circuit Court, plaintiff Tom Tuduj was found guilty of first degree murder and the disarming of a police officer.[1] *People v. Tuduj*, 2014 IL App (1st) 092536, ¶ 1, 9 N.E.3d 8, 13. According to the record in his criminal case, Tuduj murdered his supervisor on May 16, 2006, following a workplace dispute. *Id.* at ¶ 8, 9 N.E.3d at 15. At trial, Tuduj raised the affirmative defense of involuntary intoxication. *Id*. at ¶ 57, 9 N.E.3d at 24. At the time of the murder, Tuduj was taking prescription medications consisting of Wellbutrin (an antidepressant), Ambien (a sleep aid) and Propranolol (hypertension medication). *Id*. at ¶ 26, 9 N.E.3d at 18. Tuduj argued at trial that the combination of the medication (the Wellbutrin, specifically) and underlying mental illness created "a drugged state that prevented him from conforming his behavior to the requirements of law." *Id.* at ¶ 27, 9 N.E.3d at 18. Tuduj was permitted to raise the affirmative defense, but the trial court judge ultimately concluded that he "was able to appreciate the criminality of his actions" despite the medication. *Id*. at ¶ 77, 9

---

[1] This Court takes judicial notice of Tuduj's underlying criminal proceedings. *See Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983). ("federal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue").

N.E.3d at 30. Tuduj was found guilty and sentenced to 40 years for the murder charge and 5

years for the disarming of a police officer. *Id*. at ¶ 79, 9 N.E.3d at 31.

Tuduj, now incarcerated at Menard Correctional Center, filed this product liability action

*pro se* on March 23, 2015. (Doc. 1). Tuduj was granted leave to amend and he now proceeds on

his fourth amended complaint. (Doc. 83). In his fourth amended complaint, Tuduj asserts various

products liability causes of action against Sanofi-Aventis U.S. LLC (the manufacturer of

Ambien),[2] GlaxoSmithKline (the manufacturer of Wellbutrin)[3] and Wyeth-Pfizer (the

manufacturer of Propranolol).[4] Essentially, Tuduj asserts that the medications induced his

criminal conduct. In other words, he would not have committed the murder had he not been

prescribed the medications.[5]

The defendants have now filed motions to dismiss. (*see* Docs. 85 – 89). The motions

present three main arguments for dismissal: Tuduj is collaterally estopped from asserting that the

murder was caused by the medications because the issue was already litigated in his criminal

case; the claims are time barred; and  Tuduj has failed to plead sufficient facts necessary to

survive a motion to dismiss. It is unclear whether collateral estoppel is appropriate under these

circumstances because while Tuduj presented a theory that the combination of medications

---

[2] Tuduj asserts the following claims against Sanofi-Aventis U.S. LLC: Count I: Negligence, Count II: Strict Liability, Count III: Breach of Implied Warranties, Count IVA: Fraud, Count IVB: Primary Physician Fraud, Count V: Unfair Trade Practices, Count VI: Express Warranty, Count VII: Consumer Fraud Violations, Count VIII: Concert of Action Liability, Count IX: Civil Conspiracy Liability, Count X: Enterprise Liability, Count XI: Alternate Liability.

[3] Tuduj asserts the following claims against GlaxoSmithKline: Count I: Negligence, Count II: Strict Liability, Count III: Breach of Implied Warranties, Count IVA: Fraud, Count IVB: Primary Physician-Fraud, Count V: Unfair Trade Practices, Count VI: Express Warranty, Count VII: Consumer Fraud Violations, Count VIII: Concert of Action Liability, Count IX: Civil Conspiracy Liability, Count X: Enterprise Liability and Count XI: Alternate Liability.

[4] Tuduj asserts the following claims against Wyeth-Pfizer: Count I: Negligence, Count II: Breach of Implied Warranties, Count III: Concert of Action Liability, Count IV: Civil Conspiracy Liability, Count V: Fraud, Count VI: Unfair Trade Practice; Count VII: Express Warranty, Count VIII: Consumer Fraud Violations, Count IX: Alternative Liability, Count X: Strict Liability.

[5] The complaint initially included claims against Dr. Eleonora Kul-Lipski and her employer, Community First Medical Center. Dr. Kul-Lipski prescribed Tuduj the medications currently at issue. The claims were later voluntarily dismissed because Tuduj was unable to obtain a physician's affidavit of merit that is required under the Illinois "Healing Art Malpractice" statute. See 735 ILCS 5/2-622.

caused him certain side effects, Tuduj did not, in fact, raise the "Ambien defense" at his criminal trial. Tuduj appears to assert in this civil action that the Ambien was the primary contributing medication that induced his criminal acts, while at his criminal trial he argued that the Wellbutrin induced the criminal acts. Collateral estoppel may therefore be applicable to claims against Wellbutrin manufacturer GlaxoSmithKline, but it is unclear whether it should be applied against the other two defendants.

Nevertheless, this matter may be resolved on a much simpler basis – timeliness. Failure to file suit within the applicable statute of limitations is an affirmative defense, but 12(b)(6) dismissal is appropriate if the complaint itself provides all of the elements of the affirmative defense. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). The murder occurred on May 16, 2006 and Tuduj was found guilty in January, 2009. He then initiated this lawsuit on March 23, 2015, almost nine years after the murder took place. In Illinois, the statute of limitations is two years for personal injury negligence claims, 735 ILCS 5/13-202; two years for products liability strict liability claims, 735 ILCS 5/13-213; four years for warranty claims, 810 ILCS 5/2-725; five years for fraud claims, 735 ILCS 5/13-205; and three years for claims brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a. The Illinois Supreme Court has held that the statute of limitation period begins to run when "a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox Coll. v. Celotex Corp.*, 88 Ill. 2d 407, 415, 430 N.E.2d 976, 980 (1981). When that occurs, "the burden is upon the injured person to inquire further as to the existence of a cause of action." *Witherell v. Weimer*, 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874 (1981).

From the very beginning, Tuduj has asserted that the medications were a contributing

factor in the murder. The record in the criminal case states that Tuduj was interrogated by the

Chicago police several hours after the murder took place. The detective who interrogated Tuduj

testified at trial that during the interrogation Tuduj admitted committing the murder and he

"blamed it on his medications." *People v. Tuduj*, 2014 IL App (1st) 092536, ¶ 21, 9 N.E.3d 8, 17.

The involuntary intoxication argument was then a central component of Tuduj's defense through

trial and appeal. Tuduj's claims thus accrued on the date of the murder, May 16, 2016.

In response to the motions to dismiss, Tuduj argues that his claims are timely (or his

untimeliness should be excused) according to the discovery rule, the continuing violations rule

and the fraudulent concealment statute. Pursuant to the discovery rule, "a party's cause of action

accrues when the party knows or reasonably should know of an injury and that the injury was

wrongfully caused." *Clay v. Kuhl*, 189 Ill. 2d 603, 608, 727 N.E.2d 217, 220 (2000). The purpose

of the rule is to "to prevent the unduly harsh result of a statute of limitations barring a plaintiff's

lawsuit before she was even aware that she was injured." *Hawkins v. Nalick*, 2012 IL App (5th)

110553, ¶ 15, 975 N.E.2d 793, 796. Tuduj provides vague assertions that he "discovered" the

defendants' wrongdoing around 2013 and 2014. However, since May 16, 2006, Tuduj has

continuously maintained that the medications caused him to commit murder.

The continuing violations rule is also inapplicable. "A continuing violation or tort is

occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial

violation." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278, 798 N.E.2d 75, 85 (2003). The alleged

violation occurred on May 16, 2006, but Tuduj presumably ceased taking the medication

immediately thereafter. A "continuing violation" cannot be said to have occurred after the

murder took place and Tuduj was no longer consuming the medication. Thus, the continuing violation doctrine cannot extend the statute of limitations under these circumstances.

Finally, Tuduj's untimeliness is not excused through the fraudulent concealment statute. Pursuant to 735 ILCS 5/13-215, "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." Tuduj argues that the defendants have concealed the risks of side effects for the medications. However the Illinois Supreme Court noted, "[a]s a general rule, the concealment of a cause of action sufficient to toll the statute of limitations requires affirmative acts or representations designed to prevent discovery of the cause of action." *Chicago Park Dist. v. Kenroy, Inc.*, 78 Ill. 2d 555, 561, 402 N.E.2d 181, 184 (1980). The defendant's "mere silence" is insufficient to establish fraudulent concealment. *Zagar v. Health & Hosps. Governing Comm'n of Cook Cty.*, 83 Ill. App. 3d 894, 898, 404 N.E.2d 496, 500 (1980). Here, Tuduj argues that the defendants should have been more forthcoming in identifying potential side effects of their medications. However Tuduj fails to identify which affirmative acts or representations by the defendants constitute fraudulent concealment. Tuduj "knew of sufficient facts upon which to base a cause of action" throughout his criminal trial and, according to the Chicago detective who interrogated him, on the day of the murder. *Smith v. City of Chicago Heights*, 951 F.2d 834, 838 (7th Cir. 1992). Fraudulent concealment is therefore inapplicable.

Tuduj's claims accrued on May 16, 2006 and he filed this lawsuit almost nine years later on March 23, 2015. Regardless of the theory of liability, Tuduj's products liability claims against the defendants were filed too late.

## CONCLUSION

The defendants' motions to dismiss are hereby granted. The Court Clerk is directed to enter judgment in favor of defendants Sanofi-Aventis U.S. LLC, GlaxoSmithKline and Wyeth-Pfizer and against plaintiff Tom Tuduj. No further claims remain.

**IT IS SO ORDERED.**

**DATED:** **April 18, 2017.**

> *s/Reona J. Daly*
> **REONA J. DALY**
> **UNITED STATES MAGISTRATE JUDGE**